James P. Bonner (JB-0629)
**SHALOV STONE BONNER & ROCCO LLP**
485 Seventh Avenue, Suite 1000
New York, New York 10018
(212) 239-4340

Local Counsel for Plaintiff Curtis Martin

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  MAY 1 8 2007  ★

BROOKLYN OFFICE



07 2062

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

CURTIS MARTIN,

PLAINTIFF,

-against-

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON and HCC
SPECIALTY UNDERWRITERS INC.,

DEFENDANTS.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

**CIVIL ACTION**

**CASE NO. _____**

**COMPLAINT**

**FEUERSTEIN, J.**

**AZRACK, J.**

Plaintiff Curtis Martin, by and through his attorneys, alleges the following upon

information and belief:

## NATURE OF THE ACTION

1.    This complaint is brought by Plaintiff Curtis Martin seeking damages related to

the breaches of contract and breaches of the implied covenants of good faith and fair

dealing by Defendants Certain Underwriters at Lloyd's of London and HCC Specialty

Underwriters Inc. (collectively, "Defendants").

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

3.     Venue is proper in this District pursuant to 28 U.S.C. §1391(d), as Defendants Certain Underwriters at Lloyd's of London ("Underwriters") are aliens subject to jurisdiction in this District.

## THE PARTIES

4.     Plaintiff Curtis Martin is a resident of Nassau County, New York.

5.     Upon information and belief, Underwriters are syndicates of Lloyd's of London named Managing Agency Partners Ltd. (syndicate number 2791), Catlin Underwriting Agencies Ltd. (syndicate number 2003), R.J. Kiln and Company Ltd. (syndicate number 510), Hiscox Syndicates Ltd. (syndicate number 33), Atrium Underwriters Ltd. (syndicate number 570), and Liberty Syndicate Management Ltd. (syndicate number 4472). Each of these syndicates is based in England. Pursuant to the Service of Suit Clause contained in Policy No. 769/059113, Underwriters may be served through Mendes & Mount L.L.P., 445 South Figueroa Street, Los Angeles, California 90071.

6.     Upon information and belief, Defendant HCC Specialty Underwriters Inc., ("HCC"), formerly known as ASU International Inc., is a Massachusetts corporation with its principle place of business in Wakefield, Massachusetts. Pursuant to the Service of Suit Clause contained in Policy No. L00545, HCC may be served through Mendes & Mount L.L.P., 445 South Figueroa Street, Los Angeles, California 90071.

123798.v1                                                2

## FACTUAL ALLEGATIONS

7.       On August 1, 2005, Plaintiff Curtis Martin, a professional football player in the National Football League, entered into two separate insurance policies (the "Policies") with Defendants for Permanent Total Disability Insurance.       Both Policies ran concurrently and provided total coverage in the amount of $5 million.  Furthermore, both policies were effective from August 1, 2005 to August 1, 2006. The Policies are attached hereto as Exhibits A and B and are incorporated herein by reference.

8.       Certificate No. 769/059113, which was issued by Underwriters and is attached hereto as Exhibit A, provided for a limit of indemnity in the amount of $2.7 million.

9.       Certificate No. L005405, which was issued by HCC and is attached hereto as Exhibit B, provided for a limit of indemnity in the amount of $2.3 million.

10.       The choice of law provision set forth in both Policies provides that they "shall be governed by and construed in accordance with the law of the State of California."

11.       On or about December 14, 2005, Plaintiff became permanently disabled as a result of a single sudden and unexpected event, a hit to his knee during a professional football game, which caused specific physical injury and resulted in Plaintiff's total disability.

12.       As a result, on July 28, 2006, Plaintiff timely submitted to Defendants a Disability Claim Form and Physician's Report of the claimed loss.

13.       On April 5, 2007, Plaintiff received a Denial of Coverage letter from Defendants, who thereby breached their duty of coverage for Plaintiff's total disability as well as their implied covenant of good faith and fair dealing pursuant to the Policies.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

#### (Breach of Contract)

14.     Plaintiff incorporates by reference for all purposes as if fully set forth herein paragraphs 1 through 13 above.

15.     Plaintiff has performed all of his responsibilities, duties and conditions under both Permanent Total Disability Policies and has met all conditions precedent.

16.     Despite Plaintiff's performance, Defendants have intentionally breached the Policies by denying coverage following Plaintiff's proper and timely submission of the Disability Claim Form.

17.     As a direct and proximate result of Defendants' conduct and breach of their contractual obligations, Plaintiff has suffered economic damages in excess of $5 million.

### SECOND CAUSE OF ACTION

#### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

18.     Plaintiff incorporates by reference for all purposes as if fully set forth herein paragraphs 1 through 17 above.

19.     Defendants agreed to act in good faith and deal fairly with Plaintiff when they entered into the Policies and accepted premiums. Defendants thereby assumed a special relationship with fiduciary-like obligations to Plaintiff, and agreed to abide by their duties of good faith and fair dealing.

20.     Nevertheless, Defendants have wrongfully and intentionally withheld benefits due under the Policies by improperly denying coverage.   Furthermore, this intentional

withholding of benefits due under the Policies is unreasonable and was knowingly done without proper cause and, therefore, was committed in bad faith.

21.     By committing the aforementioned acts, Defendants have breached the covenant of good faith and fair dealing implied in the insurance Policies. Defendants' acts of "bad faith" include, but are not limited to, the following:

    a. Unreasonably and in bad faith denying benefits due under the Policies;

    b. Unreasonably and in bad faith denying payment and/or settlement of the claims against Defendants;

    c. Unreasonably and in bad faith ignoring and refusing to consider information favorable to Plaintiff's claim for benefits due pursuant to the Policies;

    d. Unreasonably and in bad faith refusing to pay the benefits that Plaintiff is due pursuant to the Policies;

    e. Unreasonably and in bad faith placing their own welfare and financial interests ahead of the welfare and financial interests of Plaintiff, who is their insured;

    f. Unreasonably and in bad faith compelling Plaintiff to institute this litigation to obtain benefits due under the Policies.

22.     The conduct outlined above demonstrates a failure or refusal to discharge contractual responsibilities resulting not from mistake or negligence, but rather from Defendants' conscious and deliberate decision to unfairly deprive Plaintiff of the benefits of the Policies.

23.     As a direct and proximate result of Defendants' breaches of the covenant of good faith and fair dealing, Plaintiff has suffered economic damages in excess of $5 million.

24. In breaching the covenant of good faith and fair dealing, Defendants have acted willfully, fraudulently, maliciously, oppressively, with conscious disregard of the Plaintiff's rights and with intent to vex, annoy, harass, and injure Plaintiff. Therefore, Plaintiff is entitled to the recovery of exemplary damages in an amount sufficient to deter similar conduct in the future by Defendants.

25. In addition, as a direct and proximate result of Defendants' bad faith and vexatious conduct, Plaintiff has been forced to retain counsel to initiate this litigation and to agree to pay counsel a reasonable fee for their services. Pursuant to California Code of Civil Procedure § 128.5, Plaintiff is therefore entitled to recover from Defendants all costs and attorneys' fees he incurs in connection with this action, plus interest, in addition to his actual damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court:

(a) Enter judgment against the Defendants and in favor of Plaintiff for compensatory damages in amounts to be determined at trial;

(b) Enter judgment against the Defendants and in favor of Plaintiff for treble damages in amounts to be determined at trial;

(c) Enter judgment against the Defendants and in favor of Plaintiff for any and all costs and attorneys' fees incurred in connection with the prosecution of this action; and

(d) Grant such other and further relief as justice requires.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: May 18, 2007        **SAYLES WERBNER P.C.**

Mark S. Werbner *(pro hac vice motion to be filed)*
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 939-8700

### SHALOV STONE BONNER & ROCCO LLP

By: _____

James P. Bonner (JB-0629)
485 Seventh Avenue, Suite 1000
New York, New York 10018
(212) 239-4340

Attorneys for Plaintiff

# LLOYD'S

*Lloyd's of London*

## The
# HANLEIGH COMPANIES
### HANLEIGH MANAGEMENT INC.

EASTERN REGIONAL
1 Paragon Drive, Suite 153
Montvale, New Jersey 07645
Phone: (201) 505-1050
Toll Free: (800) 443-2922
Fax: (201) 505-1051
www.hanleigh.com





# Lloyd's Policy

**We, Underwriting Members** of the syndicates whose definitive numbers and proportions are shown in the Table attached hereto (hereinafter referred to as 'the Underwriters'), hereby agree, in consideration of the payment to Us by or on behalf of the Assured of the premium specified in the Schedule, to insure against loss, including but not limited to associated expenses specified herein, if any, to the extent and in the manner provided in this Policy.

**The Underwriters** hereby bind themselves severally and not jointly, each for his own part and not one for another, and therefore each of the Underwriters (and his Executors and Administrators) shall be liable only for his own share of his syndicate's proportion of any such loss and of any such expenses. The identity of each of the Underwriters and the amount of his share may be ascertained by the Assured or the Assured's representative on application to Lloyd's Policy Signing Office, quoting the Lloyd's Policy Signing Office number and date shown in the Table.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has signed this Policy on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE
*General Manager*

FOR EMBOSSMENT BY
LLOYD'S POLICY SIGNING OFFICE

**J(A)** NMA 2421 (3/1/95) Form approved by Lloyd's Underwriters' Non-Marine Association Limited

## NOTICE

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE, AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

6. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS,

AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM
AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER
COVERAGE BECAME EFFECTIVE, YOU HAVE THE
RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS
OF RECEIVING THIS DISCLOSURE.  IF YOU CANCEL
COVERAGE, THE PREMIUM WILL BE PRORATED AND
ANY BROKER FEE CHARGED FOR THIS INSURANCE
WILL BE RETURNED TO YOU.

**12/04**
**LSW1147A**

# Schedule

Policy or Certificate No.       769/059113                    ~~Contract No. (if any)~~

The name and address of the Assured

Curtis Martin
care of: NFLPA
423 Washington Street
Suite 700
San Francisco
California 94111
U.S.A.

Insured Person
and Beneficiary: Curtis Martin

The risk, interest, location and sum insured hereunder

INDIVIDUAL PROFESSIONAL ATHLETES ·
PERSONAL ACCIDENT AND SICKNESS INSURANCE

in accordance with the attached Wording.

Location: Worldwide.

The Premium        USD 209,250 (part of USD 387,500) payable at inception.

The period of Insurance from 1st August, 2005 to 1st August, 2006
both dates at 12:01 Local Standard Time and for such further period or periods as may be
mutually agreed upon.

Dated in London                    the 29 September, 2005

**J** or **J(A)** (Schedule) 2422 for attachment to NMA 2420, NMA 2421, NMA 2461 or NMA 2462



F:\Insurance Documents\Documents\NMA\NMA2422.059113.doc.lt

## WORDING ATTACHING TO AND
## FORMING PART OF POLICY NO. 769/059113

In the name of:

Assured:                          Curtis Martin
                                  Care of: NFLPA
                                  423 Washington Street
                                  Suite 700
                                  San Francisco
                                  California 94111
                                  U.S.A.

Insured Person
and Beneficiary:                  Curtis Martin

**Occupation of Insured Person:** Professional Football Player.

This Policy shall cover the Insured Person for the benefit of Permanent Total Disability resulting from Bodily Injury or Sickness (or Disease), subject always to the Terms, Conditions and Exclusions contained herein or endorsed hereon and subject also to an Elimination Period of Twelve (12) consecutive months of Total Disability and to a Rehabilitation Period of an aggregate of four (4) regular season or post-season games.

The following Definitions shall be applicable:-

**Permanent Total Disability** shall mean that the Insured Person has become **Totally Disabled** and such **Total Disability** has continued without Interruption for the entire Elimination Period and at the end of such Elimination Period, the Insured Person's **Total Disability** is medically determined to be of a continuous and indefinite duration thereby preventing the Insured Person from ever again engaging in his Occupation.

**Total Disability or Totally Disabled** means solely and directly as a result of **Bodily Injury** or **Sickness (or Disease)** the Insured Person is certified by a Physician as being wholly and continuously prevented from engaging in his Occupation.

**Bodily Injury** shall mean a specific physical injury caused by an **Accident.** An injury is a **Bodily Injury** only if it is the direct consequence of an **Accident** and is not the accumulation of a series of accidents or traumas and if it is not directly or indirectly caused by, contributed to by and/or aggravated by any physical impairment, defect, degenerative process or infirmity existing prior to the inception of this Insurance. A physical impairment, defect, degenerative process or infirmity exists prior to the inception of this Insurance if it has been diagnosed by a health care practitioner prior to the date of inception of this Insurance or in the event that it has not been so diagnosed then, in the opinion of a health care practitioner the Insured Person could reasonably have been expected to be aware of its existence on the date of inception of this Insurance.

**Accident,** shall mean a single sudden and unexpected event, which occurs at an identifiable time and place during the period of insurance and which causes unexpected **Bodily Injury** at the time it occurs.



Policy No. 769/059113

**Sickness (or Disease)** shall mean physical illness or malady. **Sickness (or Disease)** shall not include osteoarthritis, arthritis or any other degenerative process of the joints, bones, tendons or ligaments.

**Limit of Indemnity:**   USD 2,700,000 in all part of USD 5,000,000 in all.

**Conditions:**

1. This Insurance shall run concurrently with and be subject, so far as applicable, to the same terms, definitions, conditions, exclusions, claims procedure as are contained in Certificate Number L005405, Issued by ASU International Inc., covering the identical subject matter and risk.

2. Notwithstanding the above this Insurance also excludes any claims arising from osteoarthritis, arthritis or any other degenerative process of the joints, bones, tendons or ligaments.

4. Full 24 hour coverage.

5. This Insurance is also subject to the following all as attached hereto:-

    i)   Service of Suit Clause N.M.A. 1998 naming Mendes and Mount, 725 South Figueroa Street, Los Angeles, California, U.S.A.

    ii)  Small Additional or Return Premiums Clause (U.S.A.) N.M.A. 1168.

    iii) California Mandatory Disclosure Statement (LSW 1147a).

    iv)  Lines Clause – NMA 2419.

    v)   Nuclear, Chemical, Biological Exclusion Clause.

    vi)  Several Liability Notice.

    vii) Choice of Law and Jurisdiction Clause.





29 September 2005

Policy No. 769/059113

**Several Liability Notice:**

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

Whenever or wherever reference is made to "insurers" in this Condition, the same shall be deemed to read "Underwriters".

**Choice of Law and Jurisdiction:**

This contract of insurance shall be governed by and construed in accordance with the law of the State of California.

Jurisdiction shall be in accordance with the Service of Suit Clause (NMA 1998) contained herein.



## NUCLEAR/CHEMICAL/BIOLOGICAL EXCLUSION

This policy does not cover any claim directly or indirectly arising out of, contributing to or caused by or resulting from an act of force or violence, as defined, which involves the use, release or escape of pathogenic or poisonous biological or chemical materials or of nuclear materials, or which involves, directly or indirectly, nuclear reaction or radiation or radioactive contamination.

Act of force or violence means an act against persons, organizations or property of any nature, where one or both of the following applies:

A)   The effect is to intimidate or coerce a government or civilian population, or any segment thereof, or to disrupt any segment of the economy; or

B)   it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

### LINES CLAUSE

This insurance, being signed for 100.00% of USD 2,700,000 in all (part of USD 5,000,000 in all) insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this insurance.

The percentage signed in the Table are percentages of 100.00% of the amount(s) of insurance stated herein.

NMA 2419



### Service of Suit Clause (U.S.A.)

It is agreed that in the event of failure of the Underwriters to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Mendes and Mount, 725 South Figueroa Street, Los Angeles, California 90017, U.S.A., and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States, which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**NMA 1998**

F:\Insurance Documents\Documents\Policy\069113.docigt

29 September 2005

## SMALL ADDITIONAL OR RETURN PREMIUMS CLAUSE (U.S.A.)

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this Insurance is written, it is understood and agreed that whenever an additional or return premium of $2 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

NMA1168

The Table of Syndicates referred to on the face of this Policy follows:



| BUREAU REFERENCE | 61250 27/10/05 | BROKER NUMBER | 0769 |
| --- | --- | --- | --- |

| PROPORTION % | SYNDICATE | UNDERWRITER'S REFERENCE |
| --- | --- | --- |
| 37.037037 | 2791 | H1305CG00577 |
| 18.518519 | 2003 | ND6000097178 |
| 16.666666 | 510 | PSCA05FFPA |
| 9.259260 | 33 | 97116LYAAATA |
| 9.259259 | 570 | 05AF49168CS |
| 9.259259 | 4472 | 1127040105KW |

**TOTAL LINE**
100.000000

**No. OF SYNDICATES**
6

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS IN RESPECT OF 2005
YEAR OF ACCOUNT

BUREAU USE ONLY
USL1 55   10379



One Lime Street London EC3M 7HA

# LLOYD'S



## *Lloyd's of London*

# This Insurance is effected with certain Underwriters at

Lloyd's, London (not incorporated).

# This Certificate is issued in accordance with the

limited authorization granted to the Correspondent by certain Underwriters at
Lloyd's, London whose names and the proportions underwritten by them can be
ascertained from the office of said Correspondent (such Underwriters being
hereinafter called "Underwriters") and in consideration of the premium specified
herein. Underwriters do hereby bind themselves each for his own part, and not one
for another, their heirs, executors and administrators.

# The Policyholder is requested to read this

certificate, and if not correct, return it immediately to the Correspondent for
appropriate alteration.

In the event of a claim under this certificate, please notify the
The Hanleigh Companies.



Case 1:07-cv-02062-SJF-JMA   Document 1   Filed 05/18/07   Page 24 of 40 PageID #: 24

# Certificate Provisions

**1. Signature Required.** This certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

**2. Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is, nor shall be, liable for any loss or claim whatsoever. The Insurers hereunder are those individual Underwriters at Lloyd's, London whose names can be ascertained as hereinbefore set forth.

**3. Cancellation.** If this certificate provides for cancellation and this certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

**4. Service of Suit.** It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 6 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decisions of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**5. Assignment.** This certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

**6. Attached Conditions Incorporated.** This certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached, or endorsed, all of which are to be considered as incorporated herein.

**7. Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

### Short Rate Cancellation Table For Term of One Year

| Days Insurance In Force | Per Cent of One Year Premium | Days Insurance In Force | Per Cent of One Year Premium | Days Insurance In Force | Per Cent of One Year Premium | Days Insurance In Force | Per Cent of One Year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 81-83 | 33 | 179-182 (6 month) | 60 | 306-312 | 88 |
| 2 | 6 | 84-87 | 34 | 183-187 | 61 | 311-314 | 89 |
| 3-4 | 7 | 88-91 (3 month) | 35 | 188-191 | 62 | 315-319 | 90 |
| 5-6 | 8 | 92-94 | 36 | 192-196 | 63 | 320-323 | 91 |
| 7-8 | 9 | 95-98 | 37 | 197-200 | 64 | 324-328 | 92 |
| 9-10 | 10 | 99-102 | 38 | 201-205 | 65 | 329-332 | 93 |
| 11-12 | 11 | 103-105 | 39 | 206-209 | 66 | 333-337 (11 month) | 94 |
| 13-14 | 12 | 106-109 | 40 | 210-214 (7 month) | 67 | 338-342 | 95 |
| 15-16 | 13 | 110-113 | 41 | 215-218 | 68 | 343-346 | 96 |
| 17-18 | 14 | 114-116 | 42 | 219-223 | 69 | 347-351 | 97 |
| 19-20 | 15 | 117-120 | 43 | 224-228 | 70 | 352-355 | 98 |
| 21-22 | 16 | 121-124 (4 month) | 44 | 229-232 | 71 | 356-360 | 99 |
| 23-25 | 17 | 125-127 | 45 | 233-237 | 72 | 361-365 (12 month) | 100 |
| 26-29 | 18 | 128-131 | 46 | 238-241 | 73 | | |
| 30-32 (1 month) | 19 | 132-135 | 47 | 242-246 (8 month) | 74 | | |
| 33-36 | 20 | 136-138 | 48 | 247-250 | 75 | | |
| 37-40 | 21 | 139-142 | 49 | 251-255 | 76 | | |
| 41-43 | 22 | 143-146 | 50 | 256-260 | 77 | | |
| 44-47 | 23 | 147-149 | 51 | 261-264 | 78 | | |
| 48-51 | 24 | 150-153 (5 month) | 52 | 265-269 | 79 | | |
| 52-54 | 25 | 154-156 | 53 | 270-273 (9 month) | 80 | | |
| 55-58 | 26 | 157-160 | 54 | 274-278 | 81 | | |
| 59-62 (2 month) | 27 | 161-164 | 55 | 279-282 | 82 | | |
| 63-65 | 28 | 165-167 | 56 | 283-287 | 83 | | |
| 66-69 | 29 | 168-171 | 57 | 288-291 | 84 | | |
| 70-73 | 30 | 172-175 | 58 | 292-296 | 85 | | |
| 74-76 | 31 | 176-178 | 59 | 297-301 | 86 | | |
| 77-80 | 32 | | | 302-305 (10 month) | 87 | | |

Rules applicable to insurance with terms less than or more than one year.

a. If insurance has been written for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

b. If insurance has been in force for more than one year:
1. Determine full annual premium as for insurance written for a term of one year.
2. Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.
3. Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

SLC-3 (USA) 1/89 REV.

This Declaration Page is attached to and forms part of certificate provisions (Form SLC-3 USA).

| Previous No. | NONE | Authority Ref. No. | 053034 | Certificate No. | L | 005405 |
|---|---|---|---|---|---|---|

1  Name and address
   of the Assured:

    Curtis Martin
    c/o NFLPA
       423 Washington Street, Suite 700
       San Francisco, CA  94111

2  Effective from      August 1, 2005      to      August 1, 2006
   both days at 12:01 a.m. standard time

3  Insurance is effective with certain                Percentage    100% Hereon
   UNDERWRITERS AT LLOYD'S, LONDON.

| 4 | Amount | Coverage | Rate | Premium |
|---|---|---|---|---|
| | As attached Certificate | Worldwide, Full twenty-four hour | | See attached |

5  Special Conditions:  As attached Certificate

6  Service of Suit may be made upon:    Mendes and Mount, 725 South Figueroa Street, Los Angeles, CA  90017

Dated    September 26, 2005

                                  ASU INTERNATIONAL INC.

                                  by

                                  Correspondent

## NOTICE

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE INSURERS ARE CALLED "NON-ADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER, YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

6. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRO-RATED AND ANY BROKER FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

D-2 Form (Effective 1/1/05 through 12/31/07)

## INSURING CLAUSE

Certain Underwriters at Lloyd's London, herein called the Insurer, will pay the benefits described in this Certificate, as applicable, for:

A.      TEMPORARY TOTAL DISABILITY; and/or

B.      PERMANENT TOTAL DISABILITY

subject to the terms, provisions, conditions, exclusions and exceptions on this Schedule page and the following pages, all of which form part of this Certificate.

## CONSIDERATION

The consideration for this Insurance is the Application, a copy of which is made a part of this Certificate, and the timely payment of the required premium.

**This is a Specified Occupation/Sport Certificate.** This Certificate shall terminate automatically if the Insured changes the Occupation/Sport from that listed in the Certificate Schedule, unless the Insurer's permission has been obtained in writing and any additional premium required by the Insurer has been paid, and the Insurer's sole liability thereafter shall be to return on a pro-rata basis any unearned premium paid for the balance of the Certificate term, however, there shall be no return of any premium if a claim shall have been paid prior to such termination.

## TERM

Coverage under this Certificate will begin on the Effective Date at 12:01 a.m. Coverage will end on the Expiry Date at 12:01 a.m. All times are Standard Time at the Insured's place of residence.

## UNDERWRITERS AT LLOYD'S, LONDON

### TOTAL DISABILITY ACCIDENT and SICKNESS CERTIFICATE
### SPECIFIED OCCUPATION/SPORT

**Certificate Schedule**

Assured:_____ Curtis Martin _____

Insured:_____ Curtis Martin _____

Beneficiary:_____ Curtis Martin _____

Occupation/Sport:___ Professional Football Player ___

Certificate No:_____ L005405 _____

Premium*:___U.S. $178,250 prepaid for time on risk___
*Plus any applicable surplus lines taxes and fees.

Effective Date:   12:01 a.m.____August 1, 2005____
Expiry Date:      12:01 a.m.____August 1, 2006____

Coverage:      Worldwide, Full twenty-four (24) hour.

A.   TEMPORARY TOTAL DISABILITY - ACCIDENT or SICKNESS
     Monthly Benefit:_____N/A_____
     Elimination Period:_____N/A_____ consecutive days
     Maximum Benefit Period:_____N/A_____ after the Elimination Period

B.   PERMANENT TOTAL DISABILITY - ACCIDENT or SICKNESS
     Lump Sum Benefit:_____U.S. $2,300,000 level___
     Elimination Period:_ Twelve (12) consecutive months of Total Disability_
     Rehabilitation Period:   An aggregate of _ four (4) _ regular season or post season games.

### THIS CERTIFICATE WILL ONLY INSURE AGAINST THE ABOVE DISABILITY BENEFITS
### THAT HAVE A BENEFIT AMOUNT AND ELIMINATION PERIOD INSERTED

## DEFINITIONS

1. **Accident** means an unintentional, unforeseen, unexpected event which occurs at an identifiable time and place.

2. **Act of Force or Violence**, as used in the Exclusions provision, means an act against persons, organizations or property of any nature, where one or both of the following applies:

   a) the effect is to intimidate or coerce a government or civilian population, or any segment thereof, or to disrupt any segment of the economy; or

   b) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

3. **Elimination Period** means the consecutive days or months from the date the Insured sustains Injury or contracts Sickness as stated in the Certificate Schedule, during which no benefits are payable.

4. **Injury** means bodily injury caused by an Accident which occurs while this Certificate is in force.

5. **Mental or Nervous Disorder** means any neurosis, psychoneurosis, psychopathy or psychosis, mental or nervous or emotional disease or disorder of any kind. This includes, but is not limited to bodily malfunction caused by underlying organic disease if symptoms result primarily in a dysfunction of the mind, such as may occur in schizophrenia, bi-polar personality disorder or autism.

   This will not include bodily malfunction caused by injury even if some symptoms result in a dysfunction of the mind, such as may occur in traumatic brain injuries.

6. **Occupation/Sport** means the Occupation/Sport shown in the Certificate Schedule. If the stated Occupation/Sport changes, this Insurance shall terminate. In such event, the Insurer will refund the pro-rata, unearned premium, if any, to the Insured provided that no claim shall have been paid under this Certificate.

7. **Physician** means a licensed physician other than the Insured or a member of the Insured's immediate family.

8. **Sickness** means sickness which manifests itself while this Certificate is in force.

9. **Total Disability or Totally Disabled** means solely and directly as a result of Injury or Sickness the Insured is certified by a Physician as being wholly and continuously prevented from engaging in the occupation or sport stated in the SCHEDULE.

10. Words in the masculine gender shall include the feminine.

## BENEFITS / CONDITIONS

A.     TEMPORARY TOTAL DISABILITY (T.T.D.)

**Temporary Total Disability (T.T.D.) Monthly Benefit** means the monthly benefit amount which becomes payable in the event of the Insured's Total Disability.  The T.T.D. monthly benefit is shown in the Certificate Schedule.

**Temporary Total Disability (T.T.D.) Elimination Period** means the number of consecutive days of Total Disability for which no **T.T.D.** monthly benefit is payable.  The T.T.D. Elimination Period is shown in the Certificate Schedule.

**Temporary Total Disability (T.T.D.) Maximum Benefit Period** means the maximum number of months of **T.T.D.** monthly benefit which will be paid for any one period of Total Disability. The T.T.D. Maximum Benefit Period is shown in the Certificate Schedule.

TEMPORARY TOTAL DISABILITY BENEFIT

If the Insured becomes unable to participate in the Occupation/Sport stated in the Certificate Schedule because of Total Disability, the Insurer will pay the **T.T.D.** monthly benefit.  Benefits will:

1.   start after the T.T.D. Elimination Period; and
2.   continue so long as the Insured's Total Disability continues; but not more than the **T.T.D.** Maximum Benefit Period.

## BENEFITS / CONDITIONS
(continued)

**Temporary Total Disability** means that:

1. the Insured becomes Totally Disabled and such Total Disability has continued without interruption for the entire **T.T.D.** Elimination Period; and

2. at the end of the **T.T.D.** Elimination Period, the Insured's Total Disability is medically determined to render him unable to participate in the Occupation/Sport stated in the Certificate Schedule.

Benefits shall be payable only for the period that the Insured is under the regular care of a **Physician.**

B.     PERMANENT TOTAL DISABILITY

**Permanent Total Disability (P.T.D.) Lump Sum Benefit** means the lump sum benefit amount which becomes payable in the event of the Insured's Permanent Total Disability. The P.T.D. Lump Sum Benefit is shown in the Certificate Schedule.

**Permanent Total Disability (P.T.D.) Elimination Period** means the number of consecutive months of total disability at the beginning of a period of Total Disability which must elapse before **P.T.D.** benefits may become payable. The **P.T.D.** Elimination Period is shown in the Certificate Schedule.

## BENEFITS / CONDITIONS
### (continued)

PERMANENT TOTAL DISABILITY BENEFIT

The Insurer will pay the **P.T.D.** Lump Sum Benefit if the Insured:

1.  becomes unable to engage in the Occupation/Sport stated in the Certificate Schedule because of **Permanent Total Disability;** and

2.  is living on the date the P.T.D. Lump Sum Benefit becomes payable.

**Permanent Total Disability** means that:

1.  the Insured becomes Totally Disabled and such Total Disability has continued without interruption for the entire P.T.D. Elimination Period; and

2.  at the end of the **P.T.D.** Elimination Period, the Insured's Total Disability is medically determined to be of continuous and indefinite duration thereby preventing the Insured from ever again engaging in the Occupation/Sport stated in the Certificate Schedule.

The **P.T.D.** Lump Sum Benefit shall become payable when all the requirements set forth in Items 1. and 2. of the definition of **Permanent Total Disability** are met.

## EXCLUSIONS

This Certificate does not cover loss directly or indirectly arising out of, contributed to or caused by or resulting from any of the following:

1.  intentionally self-inflicted injuries;

2.  suicide while sane; attempted suicide while sane or insane;

3.  any act of declared or undeclared War or the Insured's participation in a riot.
    Declared or undeclared War does not include acts of terrorism.
    "War" is used to mean:
    a)  hostilities following a declaration of War by a governmental authority;
    b)  if there is no declaration of War, then armed, open and continuous hostilities between two countries.

4.  Accident occurring while the Insured is in, or on, or boarding or alighting from any aircraft:
    a)  in the capacity of pilot or crew member*, flight instructor or student pilot;
    b)  being used for fire fighting, pipe or power line inspection, aerial photography or exploration.

    *This exclusion does not apply to passengers who temporarily perform pilot or crew functions in a life-threatening emergency.

5.  commission of or attempt to commit a felonious act, as defined by the laws of the jurisdiction where the crime takes place, which results in a conviction of the Insured;

6.  the Insured being under the influence of an intoxicant or any drugs or narcotics not legally available unless used as prescribed by a licensed Physician for a medical condition other than drug addiction;

7.  Insured's Mental or Nervous Disorder, emotional trauma, disease or mental sickness of any kind;

8.  any activity or condition specifically excluded by name on a Special Exceptions Rider(s) attached to and forming part of this Certificate;

9.  riding or driving in any kind of motorized race;

10.  while an Insured is engaging or participating in naval, military or air force service or operation;

11.  any activity specifically prohibited under the terms and conditions of the Insured's Employment Contract;

12.  participating in or practicing any Occupation/sport, other than the stated Occupation/sport as shown in the Certificate Schedule, for pay in that occupation or as a member of a professional team or professional association or professional league;

13.  any loss arising from osteoarthritis, cumulative injury or degenerative joint disease;

14.  death of the Insured; or

15.  an Act of Force or Violence, as defined, which involves the use, release or escape of pathogenic or poisonous biological or chemical materials or of nuclear materials, or which involves, directly or indirectly, nuclear reaction or radiation or radioactive contamination.

## AIR TRAVEL PROVISION

The Certificate, subject otherwise to its terms, provisions, conditions, exclusions and exceptions, covers claims arising out of Injury sustained by the Insured while riding as a passenger in, alighting from or boarding (but not while operating, learning to operate or serving as a member of the crew) a civil aircraft having a valid airworthiness certificate from the governmental authority having jurisdiction over private aircraft in the country of its registry and flown by a licensed pilot, while such aircraft is being used for transportation only.

## PREMIUMS

Premiums are payable in advance and in no case will payment of any premium continue the Certificate in force beyond the next premium due date, except as provided by the Grace Period. Failure to pay a premium by the due date or within the grace period is a default in payment of premium. A default of premium payment will terminate this Certificate and all coverage shall cease hereunder from the date of such termination.

## GRACE PERIOD

A grace period of thirty-one (31) days will be granted for the payment of each premium falling due after the first premium. During this grace period, the Certificate shall continue in force.

## CLAIM PROVISIONS

**Notice of Claim:** Written notice of claim must be given to the Insurer within twenty (20) days after the occurrence or commencement of any loss covered by the Certificate, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Insured to the Insurer with information sufficient to identify the Insured, will be deemed notice to the Insurer.

**Claim Forms:** When the Insurer receives notice of claim, claims forms for filing proof of claim will be furnished to the Insured. If such forms are not furnished within fifteen (15) days after the giving of such notice, the claimant will be deemed to have complied with the requirements of this Certificate as to proof of loss upon submitting, within the time fixed in the Certificate for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proof of Loss:** Written proof of loss must be furnished to the Insurer within ninety (90) days after the termination of the period for which the Insurer is liable. Failure to furnish such proof within the time required will not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

**Payment of Claims:** All indemnities will be payable to the Insured. In the event of the death of the Insured, payment of any benefits will cease on the date of death of the Insured.

**Physical Examinations:** The Insurer at its own expense will have the right and opportunity to examine the person of the Insured when and as often as it may reasonably require during the pendent of the claim hereunder.

**Right of Recovery:** If the Insurer makes a payment under this Certificate, the Insurer will assume any recovery rights the Assured, Insured or the Beneficiary has in connection with that loss, to the extent the Insurer has paid benefits related to the loss. All the Assured's, Insured's or Beneficiary's rights of recovery will become the Insurer's rights to the extent of any payment made under this Certificate. The Assured, Insured or Beneficiary will do everything necessary to secure such rights and do nothing after a loss to prejudice such rights. However, the Assured, Insured or the Beneficiary may waive any rights of recovery from another person or organization for a covered loss in writing before the loss occurs.

## GENERAL PROVISIONS

**Notices:** All notices, proofs and other communication intended for the Insurer shall be sent to their representative, namely:

ASU International Inc.
401 Edgewater Place
Wakefield, MA 01880
U.S.A.

**Fraud, Misstatement or Concealment:** Any fraud, misstatement or concealment, either in the statement of proposal made by or on behalf of the Insured prior to or when effecting this Insurance, or any fraudulent claim made hereunder, shall render this Insurance null and void, and all claims hereunder shall be forfeited.

**Entire Contract Changes:** This Certificate including the endorsements, Special Exceptions Rider(s) and the attached papers, if any, constitutes the entire contract of Insurance. No change in this Certificate will be valid until approved by an authorized representative of the Insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this Certificate or to waive any of its provisions.

**Legal Actions:** No action at law or in equity will be brought to recover on this Certificate prior to the expiration of sixty (60) days after written proof of loss has been furnished in accordance with the requirements of this Certificate. No such actions will be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Misstatement of Age:** If the age of the Insured has been misstated, all amounts payable under this Certificate will be such as the premium paid would have purchased at the correct age.

**Unpaid Premium:** Upon the payment of a claim under this Certificate, any premium then due and unpaid may be deducted therefrom.

**Conformity with State Laws:** Any provision of this Certificate, which on its date of issue, is in conflict with the laws of the state where this Certificate is issued on that date is hereby amended to conform to those laws.

## GENERAL PROVISIONS
### (continued)

**Assignment:** This Certificate may not be assigned or transferred without the prior written consent of the Insurer. The Insurer shall not be liable for the validity of any assignment.

**Time Limit on Certain Defenses:** After two years from the effective date, only fraudulent misstatements in the application may be used to void the Certificate or deny any claim for loss incurred or disability that starts after the two (2) year period.

**Several Liability Notice:** The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

Whenever or wherever reference is made to "insurers" in this condition, the same shall be deemed to read "Insurer".

## UNDERWRITERS AT LLOYD'S, LONDON

### ENDORSEMENT NUMBER ONE

## ATTACHING TO AND FORMING PART OF CERTIFICATE NO.  L005405

**ASSURED:**    Curtis Martin

**INSURED:**    Curtis Martin

**EFFECTIVE DATE OF THIS CERTIFICATE:**    August 1, 2005

**EFFECTIVE DATE OF THIS ENDORSEMENT:**    August 1, 2005

### LLOYD'S PRIVACY POLICY STATEMENT

### UNDERWRITERS AT LLOYD'S, LONDON

The Certain Underwriters at Lloyd's, London want you to know how we protect the confidentiality of your non-public personal information. We want you to know how and why we use and disclose the information that we have about you. The following describes our policies and practices for securing the privacy of our current and former customers.

### INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number
- Information about your transactions with our affiliates or other third-parties, such as balances and payment history.
- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history.

### INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services. We may also disclose information when the law requires or permits us to do so.

### CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information. We have measures in place to secure our paper files and computer systems.

### RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION

**You have a right to request access to or correction of your personal information that is in our possession.**

### CONTACTING US

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance. We can provide a more detailed statement of our privacy practices upon request.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

ASU INTERNATIONAL INC.

By:

Authorized Representative

US Lloyd's Indiv. Certificate - 5/95

7/03
LSW1135B

UNDERWRITERS AT LLOYD'S, LONDON

**ENDORSEMENT NUMBER TWO**

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO.    L005405**

**ASSURED:**    Curtis Martin

**INSURED:**    Curtis Martin

**EFFECTIVE DATE OF THIS CERTIFICATE:**    August 1, 2005

**EFFECTIVE DATE OF THIS ENDORSEMENT:**    August 1, 2005

**It is hereby noted and agreed that**

**Rehabilitation Period** shall be:

If, after a period of Total Disability, the Insured Participates in his/her Occupation/Sport and performs the duties thereof on a full-time basis for a period of at least an aggregate of four (4) regular season or post season games and/or play-off or championship games, any Total Disability beginning thereafter will be considered a new disability.

If the Insured participates in his/her Occupation/Sport for a period of less than an aggregate of four (4) regular season or post season games and/or play-off or championship games, any subsequent Total Disability will be deemed a part of the prior Total Disability, and no new Elimination Period will be required, unless the new disability results from an Injury entirely different from the prior Total Disability, in which case a new Elimination Period will apply.

"Participates" shall mean that the Insured is on the active roster of the team for which he/she plays, and/or is dressed, and/or is available and/or physically able to practice or play for such team.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

ASU INTERNATIONAL, INC.

By:

Authorized Representative